IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RATIO CHRISTI AT THE UNIVERSITY OF HOUSTON–CLEAR LAKE; ANDREA DEROBLES; and RUTH LASS, | |
| *Plaintiffs*, | |
| v. | Case No. 4:21-cv-3503 |
| RENU KHATOR, Chancellor, University of Houston System, in her official capacity; RICHARD WALKER, Interim President, University of Houston—Clear Lake, in his official capacity; | JURY TRIAL DEMANDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF |
| AARON HART, Vice President of Student Affairs; YVONNE HERNANDEZ FRIEDMAN, Assistant Vice President for Student Engagement, Division of Student Affairs; DAVID RACHITA, Dean of Students; PATRICK CARDENAS, Director, Office of Student Involvement and Leadership; ERICA NJOKU, Associate Director, Office of Student Involvement and Leadership; and SHELBY KUEPKER, Coordinator, Organizations and Activities, Office of Student Involvement and Leadership; all individually and in their official capacities, | |
| *Defendants*. | |

Plaintiffs Ratio Christi at the University of Houston–Clear Lake, Andrea DeRobles, and Ruth Lass, for their complaint against Defendants, state the following:

1

**INTRODUCTION**

1.      Ratio Christi is a student organization at UHCL comprising students who share a mutual faith in Jesus Christ as their Lord and Savior. Its identity is distinctly Christian, as is its purpose to share and defend the Christian faith.

2.      Because of its Christian-centered purpose and mission, Ratio Christi requires its student officers—the chapter's "spiritual leaders" who are charged with "promoting, guiding, and leading the spiritual health of the Chapter and its members"—to be Christians.

3.      Ratio Christi, by requiring its leaders subscribe to and identify with its members' shared purpose and beliefs, is not unique among UHCL student organizations.

4.      For example, the UHCL Vietnamese Student Association, whose purpose includes "serv[ing] the common interests of the students in various concerns regarding Vietnamese culture," restricts its officer positions "to "Vietnamese students currently enrolled at UHCL."

5.      The UHCL International Student Advisory Board, whose mission includes "promot[ing] a sense of community to international students" and "provid[ing] support and resources to international students," demands that each of its student officers "be an international student."

6.      And the UHCL Student Veterans Association restricts not only its leadership positions but also full membership status to "veterans, active duty, reserve, guard personnel and/or their surviving family members." That's because the Student Veteran's Association is committed to "veterans helping veteran[s]," "eas[ing] the transition between military and academic life," and "continu[ing] the tradition of veterans giving of themselves to the community and [country] that they swore to protect and defend."

7.     Those are just some of the examples of UHCL student organizations that limit their leadership positions, membership, or membership rights to select students. Other examples include sororities, which limit membership to women, and political student organizations, which limit membership based on political ideology.

8.     UHCL even has a written policy that allows sport club teams to impose "membership restrictions" based on "gender (men's league vs. women's league vs. co-rec/mixed league)."

9.     But among all of the student organizations at UHCL that restrict leadership positions, membership, or membership rights based on members' shared beliefs or the organization's purpose and characteristics, the university has singled out Ratio Christi by denying the chapter registered student organization (RSO) status and the benefits that come with such status.

10.     UHCL denied Ratio Christi RSO status because the chapter limits its leadership positions to members who "profess a personal relationship with Jesus Christ" and agree to live consistently with their Christian faith.

11.     This requirement, UHCL claims, runs afoul of the university's prohibition against discrimination set out in UHCL's *RSO Policies*.

12.     Under the *RSO Policies*, RSOs cannot discriminate based on race, color, religion, national origin, age, sexual orientation, mental or physical disability, veteran status, gender, sexual orientation, or gender identity and gender expression—that is, unless the organization is the Vietnamese Student Association, International Student Advisory Board, Student Veterans Association, a sorority, or sport club team.

13.     The First Amendment protects the right of all student organizations to associate around shared beliefs. The fact that UHCL disregards that right when it

comes to Ratio Christi is particularly egregious because UHCL has treated Ratio Christi differently because of its religious beliefs.

14.     UHCL's refusal to grant Ratio Christi RSO status violates Plaintiffs' free exercise, expressive association, free speech, and equal protection rights under the First and Fourteenth Amendments to the United States Constitution.

15.     Plaintiffs thus seek injunctive and declaratory relief and damages to vindicate and safeguard these fundamental rights.

### JURISDICTION & VENUE

16.     This civil rights action raises federal questions under the First and Fourteenth Amendments of United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

17.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

18.     This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–2202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district or all of the acts described in this Complaint occurred in this district.

20.     Divisional venue is proper in the Houston Division because the acts described in this complaint occurred, at least in part, in Harris County, Texas.

### PLAINTIFFS

21.     Plaintiff Ratio Christi at the University of Houston–Clear Lake (Ratio Christi) is an unincorporated expressive association made up of UHCL students. It brings this action on behalf of itself and its individual members.

22.     Ratio Christi is a Christian apologetics organization whose purpose is "to cultivate the intellectual voice of Christ and the Christian worldview . . . by

stimulating dialogue and intellectual investigation," and "foster[ing] critical thinking . . . while sharing Christ's message and love with those who have not yet accepted Him."

23.     Ratio Christi is a student chapter of Ratio Christi, Inc., (RC-National) a nonprofit corporation with its principal offices in Lafayette, Indiana.

24.     Each Ratio Christi chapter is guided by a trained, RC National chapter director.

25.     As a Christian apologetics organization, Ratio Christi seeks to communicate a Biblical worldview to the campus, explaining how the Bible applies to various current cultural, moral, and political issues.

26.     Ratio Christi's primary purpose is to share the gospel of Jesus Christ as set forth in the Holy Bible through all activities of the Chapter.

27.     Ratio Christi's mission "is to cultivate the intellectual voice of Christ and the Christian worldview at the university, and to do this by encouraging stimulating dialogue and intellectual investigation which aid in answering life's pressing questions, especially where those questions find their answers supported by the academic disciplines of study including, but not limited to, culture, history, science, philosophy, and theology."

28.     Part of how it accomplishes this is by training its members to defend the truth of the Gospel.

29.     As part of its Christian mission, Ratio Christi welcomes all students to participate in its membership, activities, and events.

30.     Ratio Christi seeks RSO status at UHCL.

31.     Ratio Christi seeks to avail itself of the meeting space, speech forums, and other benefits and privileges that are available to RSOs at UHCL.

32.     Defendants, under policies they have created and enforced, have denied Ratio Christi RSO status.

33.     Ratio Christi and its members are entitled to viewpoint neutral access to all forums available to RSOs, including access to student organization funding.

34.     Ratio Christi's members are entitled to viewpoint neutral distribution of the student services fees they pay that are distributed to RSOs.

35.     Part of Ratio Christi's mission and purpose is to be an expressive student organization at the College and to protect its members' constitutional rights, including their rights to free exercise, speech, and association; right against compelled speech; and right to viewpoint-neutral access to student organization funding.

36.     If Ratio Christi succeeds in this lawsuit, it will be able to obtain viewpoint neutral access to RSO status and to all benefits and privileges available to such groups, including access to student services fees.

37.     On information and belief, Ratio Christi's members' student services fees that are allocated to other RSOs fund expression that Ratio Christi and its members do not agree with and would not voluntarily fund.

38.     In addition to being denied access to the physical forums only open to RSOs, Ratio Christi and its members are denied access to RSO funds that are allocated from the student services fees Ratio Christi members pay because Defendants have denied them RSO status.

39.     Thus, Ratio Christi's members are compelled to support—through mandatory student services fees—ideas and philosophies that they oppose, and are denied access to the funds they pay to support RSOs.

40.     Plaintiff Andrea DeRobles is a current student at UHCL, is a member of Ratio Christi, and currently serves as the group's president.

41.     Plaintiff Ruth Lass is a current student at UHCL, is a member of Ratio Christi, and currently serves as the group's vice president.

42.     Each Student Plaintiff has paid UHCL's mandatory student services fee every semester in which she has been enrolled.

### DEFENDANTS

43.     The University of Houston System (UH System) is a public university system under the laws of the State of Texas and comprises four universities: the University of Houston, University of Houston–Clear Lake, University of Houston–Downtown, and University of Houston–Victoria.

44.     Defendant Renu Khator is, and was at all times relevant to this Complaint, the Chancellor of the UH System. She is also the President of the UH System's flagship university, the University of Houston.

45.     Defendant Khator's authority as Chancellor includes oversight and control of each university in the UH System.

46.     Defendant Khator is responsible for the approval, rejection, amendment, repeal, and enforcement of the policies and practices of the universities comprising the UH System, including the policies and practices challenged in this lawsuit—the *RSO Policies* that govern the registration of student organizations at UHCL and the practices related to those policies.

47.     Defendant Khator has the authority to review, approve, or reject her subordinates' decisions, including the decision to deny Ratio Christi RSO status.

48.     Defendant Richard Walker is the Interim President of UHCL.

49.     Defendant Walker's authority as President of UHCL includes oversight and control of UHCL and its various agencies or departments, including the Division of Student Affairs.

50.     Defendant Walker is responsible for the approval, rejection, amendment, repeal, and enforcement of the policies and practices at UHCL, including the *RSO Policies* and related practices challenged in this lawsuit.

51.     Defendant Walker has the authority to review, approve, or reject his subordinates' decisions, including the decision to deny Ratio Christi RSO status.

52.     Defendants Khator and Walker knew, or should have known, that the *RSO Policies* are discriminatory based on religion and viewpoint and were enforced against Plaintiffs. Although Defendants knew, or should have known this, they have failed to amend or repeal the policies, interpret the policies in a constitutional manner, or take any other corrective action.

53.     Defendant Aaron Hart is, and was at all times relevant to this Complaint, the Student Affairs Vice President at UHCL.

54.     In that capacity, Defendant Hart oversees the UHCL Division of Student Affairs, which comprises several UHCL offices or sub-divisions, including the Office of Student Involvement and Leadership.

55.     Defendant Hart's subordinates include Defendant Yvonne Hernandez Friedman, Assistant Vice President for Student Engagement, Division of Student Affairs.

56.     Defendants Hart and Friedman are responsible for the approval, rejection, amendment, repeal, and enforcement of the *RSO Policies* and related practices challenged in this lawsuit.

57.     Defendants Hart and Friedman have the authority to review, approve, or reject the decisions of their subordinates, including the decision to deny Ratio Christi RSO status.

58.     Defendants Hart and Friedman knew, or should have known, that the *RSO Policies* are discriminatory based on religion and viewpoint and were enforced against Plaintiffs. Although Defendants knew, or should have known this, they have failed to amend or repeal the policies, interpret the policies in a constitutional manner, or take any other corrective action.

59.     Defendant David Rachita is, and was at all times relevant to this Complaint, the Dean of Students at UHCL.

60.     Defendant Patrick Cardenas is, and was at all times relevant to this Complaint, the Director of Student Involvement and Leadership at UHCL.

61.     Defendant Erica Njoku is, and was at all times relevant to this Complaint, the Associate Director of Student Involvement and Leadership at UHCL.

62.     Defendant Shelby Kuepker is and was at all times relevant to this Complaint the Coordinator of Organizations and Activities in the Office of Student Involvement and Leadership at UHCL and Plaintiffs' direct point of contact at UHCL.

63.     Defendants Rachita, Cardenas, Njoku, and Kuepker are responsible for the approval, rejection, amendment, repeal, and enforcement of the *RSO Policies* and related practices challenged in this lawsuit.

64.     Defendants Rachita, Cardenas, Njoku, and Kuepker, independently or in consultation with each other, knowingly enforced the *RSO Policies* against Plaintiffs and engaged in religious and viewpoint discrimination against Ratio Christi—all resulting in the denial of RSO status and related benefits to Ratio Christi.

65.     Defendants Khator, Walker, Hart, Friedman, Rachita, Cardenas, Njoku, and Kuepker are sued in their official capacities for declaratory and injunctive relief and Defendants Hart, Friedman, Rachita, Cardenas, Njoku, and Kuepker are also sued in their individual capacities for damages resulting from the *RSO Policies* and related practices challenged in this lawsuit.

9

**FACTUAL BACKGROUND**

I.   **The *RSO Policies* and Student Organization Registration Process**

66.     UHCL operates a forum of student organizations that includes over 100 RSOs.

67.     On information and belief, this forum includes several benefits for RSOs, including access to funding from money set aside for RSOs from the mandatory student services fees that students pay each semester; space for meetings and events; access to student organization expos to increase organization exposure and membership; and means of advertising the organization and its events, including a dedicated page on UHCL's website.

68.     Ratio Christi has pursued RSO status at UHCL since July 2021.

69.     But Defendants have used UHCL policies (collectively referred to in this complaint as the "*RSO Policies*") and delay tactics to deny Ratio Christi RSO status and the benefits that come with that status.

70.     Under the challenged *RSO Polices* and related practices, Defendants have denied RSO status to Ratio Christi because the organization requires its officers to share its religious beliefs and support its Christ-centered mission and objectives.

71.     The challenged *RSO Policies* are:

a.   The policy titled "Section 1.2, University Recognition." This policy—*Section 1.2*—is set out in the Microsoft Word document named "Ratio Christi.docx" that Defendant Kuepker emailed to Ratio Christi on August 23, 2021.

b.   The UHCL "Anti-Discrimination" policy (*UHCL Non-Discrimination Policy*), to the extent Defendants' interpret it to prohibit a religious RSO from limiting its officer positions to members who subscribe to the organization's religious tenets.

10

Relevant here, that policy reads: "The University of Houston-Clear Lake prohibits discrimination on the basis of race, color, sex (including pregnancy), religion, national or ethnic origin, age (40+), disability, veteran status, genetic information, gender identity, gender expression, and sexual orientation."

 c. Any other UHCL policy that UHCL claims prohibits a religious RSO from limiting its officer positions to members who subscribe to the organization's religious tenets.

## A. The *RSO Policies'* unconstitutional provisions

72. Defendants' *RSO Policies* allow secular student organizations to limit their leadership positions—and even membership—to students who subscribe to the organization's secular mission or purposes but prohibit religious student organizations from limiting its leadership positions to members who subscribe to the organization's religious tenets.

73. Specifically, Defendants' *RSO Policies* state that "[a] student organization is free to establish its own procedures for election and qualifications for holding office . . . . [But] [t]here must be no discrimination on the basis of race, color, religion, national origin, age, sexual orientation, mental or physical disability, gender sexual orientation, or gender identity and gender expression."

74. Defendants' *RSO Policies* also require student organizations to set out in their constitutions the "REQUIRED Non-Discrimination Clause," which reads: "As a Registered Student Organization at the University of Houston–Clear Lake we adhere to the UHCL's Non-Discrimination Policy. The University of Houston–Clear Lake is an Affirmative Action/Equal Opportunity institution. The university provides equal treatment and opportunity to all persons without regard to race, color, religion, national origin, sex, age, genetic information, disability, or veteran status except where such distinction is required by law. Additionally, the UH

System prohibits discrimination on the basis of sexual orientation, gender identity or gender expression."

75.     Additionally, Defendants do not evenhandedly apply the *RSO Policies*' non-discrimination provisions to all student organizations.

76.     Relatedly, Defendants' *RSO Policies* also require Defendants to consider and make judgments about the content and viewpoint of student organization's constitutions—including judging whether a religious organization's leadership criteria conflict with UHCL's prohibition against a religious RSO limiting its leadership positions to members who subscribe to the organization's religious tenets.

77.     Defendants' *RSO Policies* grant UHCL officials unbridled discretion to approve or reject a student organization's application for RSO status for several reasons.

78.     The *RSO Policies* do not define or contain any comprehensive guidelines, standards, or criteria that limit the discretion of UHCL officials to determine what constitutes a student organization's failure to meet the requirements for registration.

79.     The *RSO Policies* contain no guarantee that student organizations whose application satisfies all written criteria will be granted RSO status.

80.     The *RSO Policies* do not require university officials to approve or deny an application within a certain time period.

81.     The *RSO Policies* require UHCL officials to judge whether the "purpose and goals" of a new student organization seeking RSO status are sufficiently "unique . . . from any currently registered organization."

82.     The *RSO Policies* permit the Associate Director of the Office of Student Involvement to register new student organizations "at [her] discretion."

83.     Plaintiffs challenge Defendants' *RSO Policies* facially and as applied.

12

**B.      The registration process**

84.      To become "registered," and access the RSO forum, a student organization must (a) gather at least five students; (b) create a constitution outlining officer positions, group activities, membership requirements, and so forth; (c) register the organization by, among other things, submitting the group's constitution on UHCL's "Get Involved" website; and (d) send the organizations' top two leaders to two required workshops.

85.      Under Defendants' *RSO Policies*, a new student organization that completes the Student Organization Registration Form is supposed to be granted temporary RSO status for one month while the organization completes the recognition process.

86.      Defendants' *RSO Policies* state that during this one-month period new organizations are to have the same rights and responsibilities as registered organizations, with the exception that such organizations cannot receive funds from the student government.

87.      Once a student organization has submitted the registration form and its constitution, UHCL officials—including Defendants Cardenas, Njoku, and Kuepker—review these documents and decide whether to approve the application.

**II.      UHCL Refuses to Recognize Ratio Christi**

**A.      University officials question Ratio Christi's religious beliefs and leadership requirements.**

88.      In July 2021, Ratio Christi's chapter director inquired with Defendant Kuepker about starting a Ratio Christi chapter at UHCL.

89.      Defendant Kuepker replied that all that was needed were five students, a constitution, and a registration form.

90.      Ratio Christi, having the required number of members, submitted its registration form and constitution.

91.     On August 16, 2021, Defendant Kuepker confirmed in writing to Plaintiff Ruth Lass that Defendants received Ratio Christi's RSO registration form.

92.     In the same email, Defendant Kuepker said that Ratio Christi could participate in the upcoming "Student Organization Expo."

93.     Such expos, or "tabling events," are the primary way that student organizations gain new members and name recognition on campus.

94.     But two days later, on August 18, Defendant Kuepker asked to meet with Plaintiff Lass "to chat about this new org."

95.     Defendant Kuepker and Plaintiff Lass met via Zoom on August 20, 2021.

96.     Instead of registering Ratio Christi, Defendant Kuepker, in concert with other Defendants, reviewed and rejected Ratio Christi's constitution.

97.     The same day she met with Plaintiff Lass, Defendant Kuepker emailed Ratio Christi's chapter director separately asking for a meeting "about the org prior to the group's participation in the Expo next week."

98.     Defendant Kuepker and the Ratio Christi chapter director had a Zoom meeting on August 23, 2021.

99.     During the meeting, Defendant Kuepker asked the chapter director what Ratio Christi meant by stating in its constitution that its officers' primary responsibility is "living . . . a life which places Jesus Christ at the center, setting the example for others to follow."

100.     Defendant Kuepker expressed concern about Ratio Christi's leadership requirements.

101.     Kuepker added that the chapter must also include a required non-discrimination clause in its constitution.

14

**B.     University officials create the document titled "Section 1.2, University Recognition" for Ratio Christi.**

102.    In a follow-up, August 23 email to the Ratio Christi chapter director, Defendant Kuepker linked to the *UHCL Non-Discrimination Policy*, claiming that it "covers all students at UHCL."

103.    In addition, Defendant Kuepker attached a Microsoft Word document—*Section 1.2*—that  she represented "outlines our Student Org policies regarding obtaining University Recognition."

104.     But several characteristics of *Section 1.2* indicate that Kuepker, or another University official, created the document specifically for Ratio Christi.

105.    First, the file is named "Ratio Christi.docx."

106.    Second, the file's metadata reveal that it was created on August 23, 2021—the same date as the Zoom call meeting and Kuepker's email.

107.    Third, the font type and size are not consistent throughout the document.

108.    Fourth, the document has inconsistent indents, formatting, and spacing.

109.    Fifth, the document refers to "the Student Life Council" and "Student Life Policies," which on information and belief do not exist at UHCL.

110.    Finally, the version of *Section 1.2* that Kuepker emailed to Ratio Christi was not—and is still not—posted on the  Student Involvement and Leadership website.

**C.     University officials reject Ratio Christi's constitution and bar Ratio Christi from attending student expos.**

111.    Defendant Kuepker wrote that the non-discrimination clause that is set out on the last page of *Section 1.2* is "required in every student org constitution."

112.    The next day, August 24, 2021, Ratio Christi included the required clause in its constitution, and resubmitted it for approval.

113.   Ratio Christi also added this sentence to its constitution: "This Chapter abides by this [non-discrimination] policy on the understanding that it does not prohibit the Chapter from selecting officers and leaders who agree with and abide by its religious faith, as outlined in Article IV."

114.   Article IV requires, among other things, that Ratio Christi student officers "profess a personal relationship with Jesus Christ and abstain from any conduct that would impair their ability to bear witness of their faith and serve the purpose of the organization."

115.   Defendant Kuepker informed Ratio Christi's chapter director that she forwarded a copy of the resubmitted constitution "to [her] supervisor for review because of the additional edit to the non-discrimination clause."

116.   Later that same day, August 24, Defendant Kuepker informed Ratio Christi's chapter director that "[t]he required clauses will need to be included as is without any edits made."

117.   Defendant Kuepker explained, "This is the requirement for all Registered Student Organizations at UHCL. The clauses may not be limited to specific membership positions (member vs. officer). Participation and officer status must be open to all UHCL students."

118.   In addition, Defendant Kuepker wrote, "We are going to forgo Ratio Christi's tabling in the Student Involvement Expo for this Thursday. We will follow up regarding tabling at the September 1st Expo to allow our staff time to seek guidance regarding the clause, Expo participation, and RSO status."

119.   Ratio Christi was thus prohibited from attending the August 26, 2021, expo.

120.   On August 31, 2021, Plaintiff Andrea DeRobles emailed Defendant Kuepker three questions:

16

- "Will Ratio Christi be allowed to table at the student expo tomorrow, September 1?"
- "Has our application for recognition been denied?" and
- "Can you explain our options for appealing this decision, what the timeline would look like, who is in charge of the appeal, and send me a copy of the student policy governing appeals of denials?"

121. Defendant Kuepker wrote back, "Ratio Christi will not be able to participate in tomorrow's expo. I apologize for the inconvenience and hindrance this would cause to your org recruitment."

122. In addition, Defendant Kuepker wrote, "We are seeking guidance regarding the additional language added to the required non-discrimination policy."

123. Defendant Kuepker also carbon copied Defendants Cardenas and Njoku in her August 31 reply email to Plaintiff DeRobles.

124. On information and belief, Defendant Kuepker reports to Defendant Cardenas or Njoku.

125. Ratio Christi was thus prohibited from attending the September 1, 2021, expo.

126. Defendant Kuepker failed to address Plaintiff DeRobles' question about the appeals process.

**D.    University officials continue to string along Ratio Christi and its members.**

127. On September 2, 2021, Plaintiff DeRobles replied: "At this point, since you told us our constitution is not approved and we have been prohibited from attending the expos, we would like to pursue the appeal process. We read in [*Section 1.2*] that appeals should be made to the 'Student Life Council.' Can you please tell us who we might contact at the Student Life Council about appealing? Or is there a different name or office for the Student Life Council who would handle an appeal?"

17

128.    Defendant Kuepker replied to the email the next day, but she did not answer Plaintiff DeRobles' questions about how Ratio Christi could appeal UHCL's rejection of the chapter's constitution.

129.    Instead, Defendant Kuepker pointed out in her reply email that she had researched the Ratio Christi chapter at the UH System's flagship university, the University of Houston, and discovered that the chapter had included the "unmodified" non-discrimination clause in its constitution.

130.    What Defendant Kuepker failed to note is that the University of Houston allows religious RSOs to "limit officers to those members who subscribe to the religious tenets of the organization where the organization's activities center on a set of core beliefs."

131.    The approved Ratio Christi constitution at the University of Houston includes the same leadership requirements as the Ratio Christi constitution at UHCL.

132.    The University of Houston chapter includes those leadership requirements without running afoul of any University of Houston non-discrimination policy since the University of Houston—unlike UHCL—allows religious RSOs to limit their leadership positions to co-religionists.

133.    Defendant Kuepker also said in her September 2 email that "we are yet to receive a registration form for this new organization, so completing that should be your next step."

134.    But more than two weeks earlier, on August 16, Defendant Kuepker confirmed in writing to Plaintiff Ruth Lass that Defendants had already received Ratio Christi's registration form.

135.    Despite this, Plaintiffs resubmitted the registration form on or about September 9, 2021.

18

136.    That same day, Defendant Kuepker confirmed in writing that the registration form was received but again did not approve the registration, stating, "Our team will review your application and constitution in the coming days. In terms of your constitution, we are still awaiting guidance in regard to the non-discrimination clause!"

137.    Defendants Cardenas and Njoku were carbon copied on this email.

138.    Despite repeated requests for an appeal, Defendants Kuepker, Cardenas, and Njoku have refused to acknowledge or answer Plaintiffs appeal requests regarding Defendants' rejection of Plaintiffs' proposed constitution.

139.    Refusal to approve Ratio Christi's constitution constitutes a denial of RSO status.

140.    On information and belief, Defendants have published a Student Organization Handbook.

141.    Plaintiffs have requested Defendants' Student Organization Handbook, but Defendants have refused to provide a copy or direct Plaintiffs to where they can find a copy.

142.    Defendants have not provided access to any student organization policies other than the *RSO Polices*—i.e., *Section 1.2* and the *UHCL Non-Discrimination Policy*.

143.    The *RSO Policies* state that "temporary status for a period of one month is granted to organizations that are in the process of forming. During this time, organizations are given the same rights and responsibilities as registered organizations, with the exception of Student Government Association funding."

144.    The *RSO Policies* also permit the registration of new student organizations "at the discretion of the Associate Director of Student Involvement and Leadership."

19

145.   Defendants set the Fall 2021 deadline as September 24, 2021, and have not granted Ratio Christi RSO status.

146.   During the entire process since its first application in August 2021, Ratio Christi has been and continues to be denied the rights of an RSO, including campus space for meetings and access to RSO expos like those held on August 26 and September 1, 2021.

147.   Defendants' *RSO Policies* also state that, "Should either the Associate Director of Student Involvement and or the Coordinator, Organizations and Activities determine that the proposed organization does not meet the requirements for registration; the officers will be notified of the reasons in writing. Officers may appeal that decision to the Student Life Council through the procedures stated in the Student Life Policies. The decisions of the Council will be final."

148.   Defendants have notified Plaintiffs in writing on multiple occasions that their constitution is not approved but have refused to provide information on how an appeal may be made despite multiple requests.

149.   On information and belief, there is not a current "Student Life Council" to appeal to as Plaintiffs have requested information for appealing this decision as well as attempted, without success, to find information for the "Student Life Council" online.

150.   On September 23, 2021, Defendant Kuepker confirmed that Ratio Christi has fulfilled all requirements for being an RSO.

151.   However, in the same email, carbon copying Defendants Cardenas and Njoku, Defendant Kuepker wrote to Plaintiffs that "Our Dean of Students Office is continuing to review the addition to the required clause in your constitution, and we will update you on your status as a Registered Student Organization at UHCL as soon as we can."

20

152.    By refusing to recognize Ratio Christi or allow it equal access to the RSO forum, Defendants—including Defendants Rachita, Cardenas, Njoku, and Kuepker—have discriminated against Ratio Christi based on Ratio Christi's expressed viewpoints regarding leadership requirements.

153.    Defendants have discriminated against Ratio Christi under UHCL policies and practices.

## III.    Defendants' Better Treatment of Other Student Groups

154.    The Purpose of the RSO forum is to encourage students to form interest-based organizations around shared ideas.

155.    Many student organizations do form around shared ideas.

156.    Defendants treat other student organizations more favorably than Ratio Christi under their *RSO Policies*.

157.    In denying Ratio Christi RSO status, Defendants told Ratio Christi that under UHCL policies, RSO "[p]articipation and officer status must be open to all UHCL students."

158.    That's demonstrably false.

159.    Defendants allow other student organizations to limit officer positions, and even membership, to those who support the organization's purpose.

160.    For example, the Vietnamese Students Association constitution requires that officers "must be Vietnamese students currently enrolled at UHCL," and members must have "interests in the Vietnamese culture."

161.    On information and belief, the Vietnamese Students Association is currently an RSO at the University.

162.    The International Student Advisory Board at the University requires officers to be international students.

163.   On information and belief, the International Student Advisory Board is currently an RSO at the University.

164.   The Environmental Justice Association at the University screens potential members by asking them "questions to ensure they are entering for reasons of good statue and with no malicious intent."

165.   The Environmental Justice Association requires that an officer "[a]dheres to and portrays EJA's values," which includes "spread[ing] awareness to the members and community of the vital environmental issues ongoing in the United States."

166.   On information and belief, the Environmental Justice Association is currently an RSO at the University.

167.   Prospective members of Students for Justice in Palestine (SJP) are asked "a series of questions" that "coincide with [SJP's] objective statement," which includes "show[ing] solidarity with Palestinians by fighting for their freedom, justice, and equality as well as promoting [Boycott, Divestment, and Sanctions] as a peaceful form of resistance to voice change." SJP takes those answers "into consideration" before granting membership. SJP also allows for the impeachment of officers and members who "present[ ] ideologies or policies that go against the fundamental objective of the organization."

168.   On information and belief, SJP is currently an RSO at UHCL.

169.   The Student Veterans Association limits full membership rights—not just leadership positions—to "veterans, active duty, reserve, guard personnel, and/or their surviving family members who are attending [UHCL]."

170.   On information and belief, the Student Veterans Association is currently an RSO at UHCL.

171.   Also, on information and belief, recognized sororities such as the Delta Xi Nu Multicultural Sorority and Sigma Lambda Alpha Sorority limit their membership and leadership positions to women.

172.   Finally, the UHCL Sport Club Handbook, which governs RSO sport club teams, allows teams to impose "membership restrictions" based on "gender (men's league vs. women's league vs. co-rec/mixed league)."

173.   What's more, RSO sport club teams can hold "tryouts to determine placement on different levels of teams (an A Team vs. B Team, travel team vs. practice team), . . . playing time of individuals, or some other needed differentiation between members."

174.   Thus, UHCL allows RSO Sport Club teams to treat members differently based on ability, even though Defendants' *RSO Policies* bar disability discrimination.

175.   In addition, Defendants have recognized at least one other student organization that included a disclaimer to the "mandatory" non-discrimination clause.

176.   For example, the Black Student Association at the University includes the following disclaimer below the mandatory non-discrimination clause:

> The Black Student Association does not recognize the previous statement to be an accurate representation of UHCL. However, BSA is required to share the Nondiscrimination Clause in order to exist. In the meantime, this organization advocates for true social equity and transparency campus wide.

177.   Given the purpose of the RSO forum it is unreasonable for UHCL to bar Ratio Christi from selecting leaders based on religious beliefs.

IV.    **Ratio Christi's and its Members' Beliefs and the Effect of Defendants'
Discrimination on Plaintiffs**

178.   Ratio Christi seeks to preserve its Christian identity, purpose, and
message.

179.   As a Christian organization, Ratio Christi's officers "are the spiritual
leaders of the Chapter" and are "responsible for promoting, guiding, and leading the
spiritual health of the Chapter and its members; for leading others toward
Christian maturity; for teaching faithfully the Word of God; and for teaching,
inculcating, defending, communicating, and advocating the Chapter's Christian
beliefs," to the UHCL community.

180.   The primary responsibilities of Ratio Christi's officers are (a) to
exercise spiritual leadership; (b) "to live in a manner that is consistent with
Christian beliefs and conduct standards, so as not to undermine the Chapter's
Christian witness on campus"; and (c) "to ensure that the viewpoints the Chapter
advocates on campus through its events and activities are consistent with Christian
teaching and a Biblical worldview."

181.   Ratio Christi charges each officer with the responsibility "of living,
before the Chapter and the world, a life which places Jesus Christ at the center."

182.   As a result, all Ratio Christi officers must, among other things,
"profess a personal relationship with Jesus Christ and abstain from any conduct
that would impair their ability to bear witness of their faith and serve the purposes
of the organization."

183.   It would contradict Ratio Christi's religious beliefs and expressive and
associational purpose to permit individuals who do not profess a relationship with
Jesus Christ or share its religious beliefs to serve as its officers.

184.   Conferring leadership positions to those who do not profess a
relationship with Jesus Christ and share Ratio Christi's religious beliefs would

24

communicate a message which Ratio Christi opposes and does not wish to communicate.

185. Ratio Christi's leadership policies are an expression of its faith and are integral to ensuring that it can achieve its religious mission.

186. Ratio Christi does not limit leadership based on any criterion, other than religion (and the political and social philosophies that flow from its religious beliefs), listed as a protected class in Defendants' *RSO Policies*.

187. Because of their sincerely held religious beliefs, Plaintiffs object to the challenged portions of Defendants' *RSO Policies* because they require Ratio Christi to open its officer positions to students who do not share the organization's religious beliefs or support its religious purpose and mission.

188. Defendants' *RSO Policies* and their enforcement of those policies burdens Plaintiffs' free exercise, speech, and expressive association rights.

189. Defendants' *RSO Policies* and their enforcement of those policies give Ratio Christi less access to campus resources than other student organizations at UHCL.

190. Because of Defendants' actions enforcing their *RSO Policies*, Ratio Christi was denied access to two student organization expo events, has no access to student services fee funding, cannot reserve meeting and event space, and has minimal access to administrative support from the Student Involvement and Leadership Office, among other things.

191. Defendants' *RSO Policies* and their enforcement of those policies subject Ratio Christi (and all other student organizations) to an annual review process in which officials have unbridled discretion to determine each organization's standing on campus and access to campus resources and funding and must consider a variety of content- and viewpoint-based factors when deciding whether to grant an organization "recognized" status.

192.    Defendants' *RSO Policies* and their enforcement of those policies require Plaintiffs to communicate a University-mandated ideological message that they do not wish to communicate.

193.    Plaintiffs hold and advocate Christian beliefs and viewpoints which they believe are divinely mandated, universally applicable theological and ethical propositions.

194.    Plaintiffs seek to maintain fidelity to these beliefs and viewpoints in their public as well as private expressions including through associating together as a group that expresses those beliefs and viewpoints.

195.    Defendants' *RSO Policies* and their enforcement of those policies compel Plaintiffs to send a message which conflicts with their Christian beliefs about who can lead their Christian organization.

196.    Plaintiffs object to the requirement compelling them to speak a message with which they disagree as a condition of being granted RSO status.

**E.    Defendants' RSO Funding Policy**

197.    Defendants create a forum for students' expression by collecting mandatory student services fees that are designated for redistribution to RSOs.

198.    Every active student member of Ratio Christi pays these fees.

199.    The fees are pooled into a fund for distribution to RSOs.

200.    RSOs use the funds to engage in expressive activities and further their missions.

201.    On information and belief, student services fees are distributed to organizations that individual plaintiffs and Ratio Christi members disagree with and would not voluntarily fund.

202.    Only RSOs are eligible to receive distributions from the pool of funds designated for RSOs.

203.    If a student organization is denied RSO status, it is denied access to distribution of the student services fees that are designated for RSO expression.

204.    Defendants do not maintain an exhaustive list of objective content- and viewpoint-neutral criteria by which to determine when an organization is eligible to become an RSO.

205.    Defendants include viewpoint discriminatory criteria for determining access to RSO status.

206.    Because RSO status serves as a gateway barrier to access to the forum created by the RSO fund, Defendants enforce viewpoint discriminatory policies that exclude groups from receiving RSO funding.

207.    Defendants' *RSO Policies* and their enforcement of those policies compel all University students, including Plaintiffs, to subsidize the speech of third parties through a student services fee system that does not allocate student services fees in a viewpoint neutral fashion.

## F.    Monetary Damages

208.    Plaintiffs DeRobles and Lass, and other student members of Ratio Christi, have paid mandatory student services fees—fees that Defendants distribute in a viewpoint-discriminatory manner.

209.    Because Defendants have denied Ratio Christi RSO status, Ratio Christi cannot reserve space on campus for its meetings. Plaintiffs DeRobles and Lass, and other student members of Ratio Christi, have therefore incurred travel expenses for off-campus chapter meetings.

## STATEMENTS OF LAW

210.   Each and all of the acts alleged in this complaint were done by Defendants, or their agents or persons under their control, under the color and pretense of state law, statutes, ordinances, regulations, customs, usages, or policies of the State of Texas.

211.   Defendants knew or should have known that they were violating the constitutional rights of all student organizations (including Ratio Christi) and their members by:

   a.   Denying Ratio Christi registered status because it requires that its officers, who have religious responsibilities, share the organization's religious beliefs and support its purposes;

   b.   Conditioning a student organization's access to campus resources and student services fee funding on a system where UHCL officials have unbridled discretion to grant or deny registered or recognized status;

   c.   Conditioning a student organization's access to campus resources on policies where University officials must consider multiple content- and viewpoint-based factors; and

   d.   Compelling Plaintiffs to pay student service fees into a system that is viewpoint discriminatory.

212.   The policies and practices that led to the violation of Plaintiffs' constitutional rights remain in effect.

213.   Plaintiffs are suffering irreparable harm from Defendants' *RSO Policies* and Defendants' enforcement of those policies.

214.   Plaintiffs have no adequate or speedy remedy at law to correct the deprivation of their rights by Defendants.

28

215.    Defendants' actions and policies, as set forth above, do not serve any rational, legitimate, or compelling state interest and are not narrowly tailored to serve any such interests.

216.    Because of Defendants' actions, Plaintiff Ratio Christi and its members have suffered, and continue to suffer, economic injury and irreparable harm, and are entitled to an award of monetary damages and equitable relief.

217.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their rights under the United States Constitution and to an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### COUNT ONE
### Violation of the First Amendment to the U.S. Constitution
### Expressive Association
### 42 U.S.C. § 1983

218.    Plaintiffs repeat each of the allegations in paragraphs 1–217.

219.    Implicit in the free exercise, speech, and assembly rights the First Amendment guarantees is a corresponding right to associate with others in the pursuit of a wide variety of religious, political, social, economic, educational, and cultural ends.

220.    Plaintiffs engage in expression and expressive activities as a group.

221.    Plaintiffs believe Ratio Christi's on-campus speech is a way to share the Gospel of Jesus Christ with non-Christians and a way to disciple and equip other Christians on campus to grow and mature in their faith.

222.    Ratio Christi limits officer positions to members who "profess a personal relationship with Jesus Christ and abstain from any conduct that would

impair their ability to bear witness of their faith and serve the purposes of the organization."

223.    Defendants' *RSO Policies* compel Ratio Christi to open its officer positions to members who do not subscribe to and live out the chapter's beliefs.

224.    Compelling Ratio Christi to accept leaders who do not subscribe to and live out the chapter's beliefs would force Ratio Christi to associate with and promote a message Plaintiffs disagree with.

225.    Compelling Ratio Christi to do so also runs contrary to the chapter's expressive purposes for which they created the chapter, including "[e]xpressing the Good News of Jesus Christ, as set forth in the Holy Bible, through all activities of the Chapter."

226.    Compelling Ratio Christi to associate with leaders who do not subscribe to and live out the chapter's beliefs would jeopardize the chapter's relationship with RC-National and deprive the chapter of the opportunity to associate with likeminded Christians.

227.    Defendants' *RSO Policies* and related practices violate the Expressive Association Right of the First Amendment to the United States Constitution, both facially and as applied.

### COUNT TWO
### Violation of the First Amendment to the U.S. Constitution
### Free Speech Clause—Viewpoint Discrimination
### 42 U.S.C. § 1983

228.    Plaintiffs repeat each of the allegations in paragraphs 1–217.

229.    In a limited forum, the Free Speech Clause of the First Amendment prohibits the government from discriminating based on viewpoint, or a speaker's motivating ideology, opinion, or perspective.

230.    Within that same forum, the Free Speech Clause requires the government to adequately limit the discretion of university officials who grant (or

30

deny) RSO status or access to student fee funding through narrow, objective, and definite standards to protect against viewpoint discrimination.

231.   The University created a limited public forum by recognizing student organizations.

232.   The University created a limited public forum by compelling students to pay a mandatory student services fee and distributing that fee to student organizations for expressive purposes.

233.   Defendants' *RSO Policies*—specifically *Section 1.2*—gives UHCL officials unbridled discretion to discriminate based on viewpoint.

234.   *Section 1.2*:

 a. permits the registration of new student groups "at the discretion of the Association Director of Student Involvement and Leadership";

 b. requires new organizations "to be unique in their purpose and goals from any currently registered organization";

 c. do not define or contain any comprehensive guidelines, standards, or criteria that limit the discretion of UHCL officials to determine what constitutes a student organization's failure to meet the requirements for registration;

 d. does not require university officials to grant RSO status to organizations that meet *Section 1.2*'s requirements; and

 e. does not require university officials to approve or deny an application within a certain time period.

235.   Defendants have also engaged in viewpoint discrimination against Plaintiffs by denying Ratio Christi's request for RSO status because of its religious viewpoint.

236.    Defendants have applied their *RSO Policies* to Plaintiffs, thus barring Plaintiffs from limiting officer positions to members who subscribe to and live out Ratio Christi's religious beliefs, which are protected viewpoints.

237.    Yet Defendants have created or permitted carveouts to their *RSO Policies* for other RSOs at UHCL that impose viewpoint criteria on their members or leaders, or both.

238.    Defendants have compelled individual Plaintiffs and Ratio Christi members to pay into a viewpoint discriminatory student fee funding system.

239.    Defendants' *RSO Policies* and related practices violate the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

**COUNT THREE**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise Clause**
**42 U.S.C. § 1983**

240.    Plaintiffs repeat each of the allegations in paragraphs 1–217.

241.    Plaintiffs are motivated by their sincerely held religious beliefs to promote speech on campus on several topics from a Christian worldview.

242.    Plaintiffs believe their on-campus speech is a way to share the Gospel of Jesus Christ with non-Christians and to disciple and equip other Christians on campus to grow and mature in their faith.

243.    The Free Exercise Clause of the First Amendment guarantees religious believers—at a bare minimum—equal treatment.

244.    A public university policy that burdens religious exercise and is not both neutral and generally applicable must satisfy strict scrutiny.

245.    Ratio Christi limits officer positions to members who "profess a personal relationship with Jesus Christ and abstain from any conduct that would

impair their ability to bear witness of their faith and serve the purposes of the organization."

246.    Defendants' *RSO Policies* and related practices burden Plaintiffs' religious exercise by putting Plaintiffs to the choice of (1) limiting officer positions to members who subscribe to and live out Ratio Christi's religious beliefs and thus foregoing RSO status and the rights, privileges, and benefits that flow from that status; or (2) opening officer positions to any member and thus significantly affecting Ratio Christi's religious message and mission.

247.    Defendants' *RSO Policies* and related practices are not both neutral and generally applicable.

248.    Defendants have established both formal and de facto exemptions to their *RSO Policies*.

249.    University guidelines explicitly allow club sports teams to restrict membership or leadership, or both, based on at least one of the categories listed in the *RSO Policies*.

250.    Several student organizations at the University restrict membership or leadership, or both, based on at least one of the categories listed in the *RSO Policies*.

251.    Defendants have granted each of these organizations RSO status even though they restrict membership or leadership, or both, based on at least one of the categories listed in the *RSO Policies*.

252.    Defendants have granted recognition to at least one other organization that added a caveat to the compelled non-discrimination clause.

253.    Defendants have not consistently applied their *RSO Policies* to student organizations that restrict membership or leadership, or both, based on at least one of the categories listed in the *RSO Policies*.

254.    Defendants' *RSO Policies* and related practices violate the Free Exercise Clause of the First Amendment to the United States Constitution, both facially and as applied.

### COUNT FOUR
### Violation of the First Amendment to the U.S. Constitution
### Free Exercise and Establishment Clauses
### 42 U.S.C. § 1983

255.    Plaintiffs repeat each of the allegations in paragraphs 1–217.

256.    The Religion Clauses of the First Amendment guarantee the right of religious groups to choose their own leaders without government interference.

257.    Ratio Christi's "mission is to equip university students and faculty to give historical, philosophical, and scientific reasons for following Jesus Christ."

258.    In support of this mission, Ratio Christi limits officer positions to members who "profess a personal relationship with Jesus Christ and abstain from any conduct that would impair their ability to bear witness of their faith and serve the purposes of the organization."

259.    Ratio Christi's officers are the "spiritual leaders" of their chapter.

260.    The officers are charged with "promoting, guiding, and leading the spiritual health of the Chapters and its members; for leading others toward Christian maturity; for teaching faithfully the Word of God; and for teaching, inculcating, defending, communicating, and advocating the Chapter's Christian beliefs."

261.    The officers are called on to "live in a manner that is consistent with Christian beliefs and conduct standards, so as to not undermine the effectiveness of the Chapter's Christian witness on campus."

262.    The officers are also the keepers of the chapter's orthodoxy; "they are responsible to ensure that the viewpoints the Chapter advocates on campus through

34

its events and activities are consistent with Christian teaching and Biblical worldview."

263.   Defendants' denial of RSO status for Ratio Christi—including the rights, privileges, and benefits that flow from that status—because the chapter limits officer positions to members who subscribe to and live out the chapter's religious beliefs violates Ratio Christi's First Amendment right to religious autonomy to select its own religious leaders.

264.   Defendants' *RSO Policies* and related practices violate the Religion Clauses of the First Amendment to the United States Constitution, both facially and as applied.

**COUNT FIVE**
**Violation of the Fourteenth Amendment to the U.S. Constitution**
**Equal Protection Clause**
**42 U.S.C. § 1983**

265.   Plaintiffs repeat each of the allegations in paragraphs 1–217.

266.   The Equal Protection Clause of the Fourteenth Amendment protects against invidious discrimination.

267.   Plaintiffs are similarly situated to other student organizations at UHCL and their members.

268.   Ratio Christi limits officer positions to members who "profess a personal relationship with Jesus Christ and abstain from any conduct that would impair their ability to bear witness of their faith and serve the purposes of the organization."

269.   Under Defendants' *RSO Policies* and related practices, Defendants have refused to grant Ratio Christi RSO status unless Plaintiffs agree not to limit Ratio Christi's officer positions to members who subscribe to the organization's religious tenets.

35

270.    Under Defendants' *RSO Policies* and related practices, Defendants have treated other student organizations and their members more favorably than Plaintiffs.

271.    Defendants have established both formal and de facto exemptions to their *RSO Policies*.

272.    University guidelines explicitly allow club sports teams to restrict membership or leadership, or both, based on at least one of the categories listed in the *RSO Policies*.

273.    Several student organizations at the University restrict membership or leadership, or both, based on at least one of the categories listed in the *RSO Policies*.

274.    Defendants have granted each of these organizations RSO status even though they restrict membership or leadership, or both, based on at least one of the categories listed in the *RSO Policies*.

275.    Defendants have granted recognition to at least one other organization that added a caveat to the compelled non-discrimination clause.

276.    Because Defendants' disparate treatment of Plaintiffs infringes on Plaintiffs First Amendment rights, discriminatory intent is presumed.

277.    What's more, Defendants have engaged in discriminatory activity by applying the *RSO Policies* to Ratio Christi to intentionally discriminate against Plaintiffs' rights under the First Amendment.

278.    Defendants' *RSO Policies* and related practices violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, both facially and as applied.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A.   A declaratory judgment that Defendants' *RSO Policies* and related practices violate Plaintiffs' rights under the First and Fourteenth Amendments facially and as-applied as delineated above;

B.   A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing Defendants' *RSO Policies* to deny registered or recognized status to Ratio Christi because it selects leaders who support its mission and purposes and who share and will advocate for its religious beliefs;

C.   A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from charging Plaintiffs student services fees in any future semesters so long as the viewpoint discriminatory system created by Defendants' *RSO Policies* remains in place;

D.   Compensatory and nominal damages for the violation of Plaintiffs' constitutional rights;

E.   Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

F.   All other further relief to which Plaintiffs may be entitled.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted this 25th day of October, 2021.

*s/ Ryan L. Bangert*

Ryan L. Bangert**
*Attorney-in-charge*
Texas Bar No. 24045446
S.D. Tex. Bar No. 641892
J. Caleb Dalton*
D.C. Bar No. 1033291
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 393-3622
Email: rbangert@ADFlegal.org
Email: cdalton@ADFlegal.org

Murphy S. Klasing
S.D. Tex. Bar. No. 00791034
WEYCER, KAPLAN, PULASKI & ZUBER, P.C
24 Greenway Plaza, Suite 2050
Houston, Texas 77046
Telephone: (713) 961-9045
Fax: (713) 961-5341 Fax
Email:  mklasing@wkpz.com

Greggory R. Walters*
AZ Bar No. 036590
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
Email: gwalters@ADFlegal.org

* Pro Hac Vice *applications forthcoming*
***Not licensed in D.C.; admitted to the S.D. Tex.*

*Counsel for Plaintiffs*